Next case up is 411-0612, 411-0659 Consolidated, Michaels v. ILRB. For the appellant is Barbara Bell, U.S. G-Man. And for the appellee is Mary Labreck and Melissa Auerbach. Are you folks both going to be arguing? Okay, so you've told the clerk how you want your time divided? Okay. Before I begin, I want to mention that we ask everyone to be here early, and you are here early, so we can start the arguments early, and I want to thank you for doing that. Ms. Bell, you may proceed. Okay. May it please the Court. Counsel. Good morning, Your Honors. Just for the record, I'm Barbara Bell, and I represent the petitioner, John Michaels. This case is rather simple.  Mr. Michaels was employed as a senior parole agent and in 2008 lost his job. He disagreed with his supervisor, Robert Henke, regarding the handling of a parolee who was accused of sexually molesting a child. Mr. Michaels said that Mr. Henke, his supervisor, asked him to backdate documents. Mr. Michaels had previously asked his supervisor to issue a warrant for the parolee, Kenneth Herron. Mr. Michaels said that Mr. Henke refused to do so until solid evidence was presented by the victim's mother. The child had been molested, and then when Mr. Henke realized his mistake, he tried to cover it up by asking Mr. Michaels to backdate documents. When Mr. Michaels refused, he was placed on administrative leave for about 10 months. He eventually lost his job, but in the meantime, while he was on administrative leave, he did receive a favorable performance evaluation, in which in most items I believe he met or exceeded the goals that he was to meet. Nevertheless, he was terminated, I believe in May 2008, and then in December 2008, the union sent him a letter telling him that he would not take his dismissal to arbitration, and that if he chose, he could resign, and that his dismissal would be purged from his employment files. But this pausing right there, isn't that of some benefit for your client? Yes, it is. That the union was able to obtain for him? Yes. But he found it was insufficient? Correct. Mr. Michaels had an argument that he basically was framed, and that his supervisor was making him the scapegoat for the supervisor's mistakes. And that constitutes invidious conduct by the union. Mr. Michaels was intentionally discriminated against. The union could have arbitrated his dismissal, and perhaps some of the facts would have come out in the arbitration, and maybe Mr. Michaels... You say he was discriminated against. What evidence is there of that? Well, I don't mean discriminated in the sense that he was discriminated against in the sense of age or gender. But the union chose not to vigorously represent him, and they singled him out by not taking his case to arbitration. Doesn't there have to be some animus on the part of the union before you can even make that argument? Yes, but it appears there was some animus, because Mr. Michaels was investigated by the state police and by the state's attorney, and no criminal charges were brought against him. How does that translate into animus on the part of the union? Well, it could be... it's a hard question to answer. It could be the union was just embarrassed by his conduct. Why? Because his discipline record was a factor in his dismissal. He was accused of making several serious mistakes, and then he was investigated by the state police and the state's attorney. And he's a parole agent, and he's being looked at carefully for alleged... Let me ask it in this fashion. The union, by representing these people, signs on essentially to be their advocate when they get into trouble. In that regard, they're not unlike defense attorneys in criminal matters or public defenders who sign on. They're going to be representing people who get into trouble, and will try to do the best they can to advocate the interests of their clients. It would be a strange notion to me that people in this position would be embarrassed by the allegations against their clients when they're called upon to defend those clients, or to do the best they can on their behalf. We see lots of cases where people are fighting vigorously on behalf of their clients, criminal cases, and unions on behalf of people who are sought to be fired or disciplined for some sort of misconduct or misbehavior in the eyes of their employer. The notion that the union is embarrassed is a new one for me. What about this case makes it embarrassing? I see your point. I don't want to belabor it. I want to move on. With regard to whether Mr. Michaels filed the unfair labor charge in a timely fashion, it was filed in a timely fashion because he was not notified until December 4, 2008, that the union would not go ahead with the arbitration. That was basically the last step for him. He filed the charge six months later on June 4, 2009. Is there a single case that supports your position? Well, I would say that the case, I think it's WEPA-LEA versus the Illinois Educational Labor Relations Board, is the closest to this situation. In that case, the union argued on behalf of a teacher that there was an ongoing contract violation and that, therefore, the time to file a charge against the employer did not expire. In this case, Mr. Michaels was continually being not properly represented by the union, so it was an ongoing violation. Couldn't he pursue both simultaneously, the unfair labor practice charge and the union grievance? Yes. What prevented him from doing that? I mean, he was aware more than six months prior to the filing of the unfair labor practice charge that he had been discharged and the reasons for it. That's true. So what prevented him from filing his unfair labor practice charge within six months of that knowledge? He just felt that the union was continually not living up to its legal obligation to represent him and that, therefore, he had until the time when the union finally gave him an answer about what it would do for him. There's – I would – just one last point that I want to make. I would say that Mr. Michaels' situation is different from the situation in Hoffman v. Lonza. In that case, the union was negligent and forgot to file a document in time to – on behalf of the employee. And because of the union's negligence, the employee lost out and had no recourse. In this case, the union chose not to help Mr. Michaels because of the fact that he was under criminal investigation and because he had refused to backdate documents to help the supervisor. So my point is this. His situation is not the same as Hoffman v. Lonza, and it's even worse than Hoffman v. Lonza, which was just simply negligence. I have nothing further unless you have more questions. You'll have another opportunity to address us more about it. Thank you, counsel. Okay. Counsel for Appolite. Good morning. May it please the court. Counsel. My name is Mary Labreck. I'm an assistant attorney general here representing the Illinois Labor Relations Board and the Illinois Department of Central Management Services, the employer in this case. The board properly found that the charge against the employer was untimely based on the plain language of the Illinois Public Labor Relations Act, the board's implementing regulations, and the relevant case law. Section 11A of the Act states that the charge must be filed within six months of the unfair labor practice charge unless the employee did not reasonably have knowledge of the facts. Michael's charge against the employer was that the discharge was an unfair labor practice charge, and he was well aware of that. Therefore, the filing deadline for the charge against the employer was six months from the date of the discharge. The argument seems to be that the timing is told while waiting to see whether the union is going to be representing him. Is that true? He's got two arguments about that, and both of them are mistaken. One of his arguments is based on case law that is irrelevant to this case. One theory is that he has a right to sue his employer whenever he can show that he has exhausted the grievance process and the union breached its duty of fair representation. But a right to sue is irrelevant in this case because this is not an appeal of original action in the circuit court. This is an administrative review case, and most of the cases that he cited do not apply the Illinois Labor Relations Act. The Vaca and Gutierrez cases interpret federal labor law governing private employees, and the Parks is an Illinois case involving public employees. But the unfair labor practice in that case took place prior to the enactment of the Act, and the decision does not mention the Act. And moreover, the policy reasons behind those federal labor decisions do not apply in this case. Those cases were designed to compensate for a situation that no longer exists in this context. Employees under the federal labor law need to be able to go to court and sue because the General Counsel of the National Labor Relations Board has unreviewable discretion to initiate claims and dismiss charges. And in Illinois prior to the Act, public employees had even less recourse. But the Act was a comprehensive revision of the law governing public employees in this state. And now we have the Labor Relations Board, and the decisions of the Labor Relations Board are judicially reviewable under the administrative review law. And that is why we are here today. So we can forget about those older decisions, and all that matters is whether the Act is satisfied. As Your Honor mentioned, the grievance process and the unfair labor practice process move along two parallel paths. He has another theory, Michael has another theory, which is that there was a continuing violation in this case. But there are two problems with that argument. First, it's forfeited because he raised it for the first time in his reply brief. And the second problem is that it's baseless in any event. The Wapella case that he cites does acknowledge the possibility of finding a continuing violation, but it doesn't say that a discreet action such as a discharge becomes a continuing violation just because the effects are continuing. In fact, it rejected the petitioner's claim in that case that a refusal to bargain amounted to a continuing violation. As for the case against the union, the Board properly dismissed that case because he points to no evidence of hostility on the part of the union. His allegations are all legal conclusions, and there are no facts which if true would support his claim of an unfair labor practice charge. Secondly, even if there were hostility, as he alleges, it's not the kind of hostility that the Act is concerned about. The only reason to worry about hostility against the employee is if it interferes with the analysis. According to his own allegations, the hostility in this case resulted from the union's investigation of the facts. It's not something that influenced it before it reached its conclusion. Therefore, this kind of hostility does not support his claim. He seems to be suggesting that this Court can infer the existence of some hostility based on the facts that he alleges. But even if his perceptions of the merits of the facts that he alleges are correct, which it is not, it is not enough to show that the grievance is meritorious, as cases have repeatedly said. And this is because he also must show that the conduct is intentional, and the mere fact that a grievance may be meritorious does not help this Court to decide whether the conduct was intentional or the result of negligence or simple error. He makes two other claims. Briefly, the problems with those are that they are procedurally, the other claims against the union, those are procedurally defaulted. Because while he did raise them in the proceedings before the Executive Director, he did not raise them in his claims of error before the Board. And the Board's decision is the one that this Court is reviewing. And the arguments are also untimely, because the particular things that he's alleging happened, happened even before the discharge, which we've said is untimely. He says that these can be excused because he stated, but they were not stated in the right place, as I've said, and they were never stated clearly, and the case is not otherwise meritorious. And so there's no reason to excuse the procedure of default. If there are no questions, we will stand on our feet. Thank you, Counsel. Thank you. Ms. Auerbach. May I please the Court? I'm Melissa Auerbach, I represent the Absentee Counsel 31 Respondent. Michaels was discharged by the State based on allegations that he, in his job as a Senior Parole Agent, violated rules and procedures and engaged in misconduct having to do with parolees on his caseload. The Union notified Mr. Michaels that it had reviewed the facts and evidence in his case regarding his discharge and his discharge grievance and had been unsuccessful to persuade the State to reverse the discharge and had made a decision based on the merits that it would not be able to win the case at arbitration and had negotiated for him instead the opportunity to resign and have the resignation stand instead of a discharge. Michaels alleged before the Board that he was discharged in retaliation for actions he took on one of his cases. And he alleged before the Board with respect to the Union that the Union retaliated against him because it thought criminal charges should have been brought against him and that had the Union more fully investigated the facts underlying his grievance, it would have decided to pursue arbitration. However, a claim under the Illinois Public Labor Relations Act by an employee against the Union for breach of the duty of representation is deemed by the intentional misconduct standard. It's not a duty of due care, it's not a negligence standard, and it's more stringent even than the standard under federal labor law which is that a Union has to engage in conduct which is arbitrary, discriminatory, and in bad faith. Here the standard is intentional misconduct, which means he has to show not just that there was adverse representation action against him, but that that was based on discriminatory reasons, either reasons prohibited by statute based on race, gender, or sex, or because he engaged in some kind of dissident Union practices and therefore alienated the Union leaders so that they acted against him, not based on assessment of his case, but based on arbitrary, intentional discrimination. That standard is set forth in board cases and in prior appellate court cases, the Murray case and the Metropolitan Alliance of Police case. Michael's here must show, therefore, that the Union decided not to pursue his grievance for discriminatory reasons. He argues that the Union engaged in intentional misconduct because it didn't take his case to arbitration, but while that decision is intentional, it's not the type of intent that is a breach of duty for representation. The reason for the deferential standard in duty for representation cases is that the Union has the obligation and duty to represent the interest of the bargaining unit as a whole, and has to have some discretion to assess individual cases and make a decision whether to pursue them. So you represent the Union? Yes. Was your client embarrassed by these proceedings? There's nothing in the record to show that. The Union has, over the years, represented people in all kinds of discharge cases and charged with all kinds of allegations that could be framed as embarrassing. Misconduct of all kinds of cases. Cases of allegations of theft, allegations of mistreatment of mental health patients, all kinds of cases. What can embarrass somebody? Any of these charges could embarrass somebody, but the issues are what happened and what the evidence shows and the merits. Even though the standard is entirely deferential, there's no evidence in this case, either under a much lower standard, that there was any breach. There's no evidence that the Union did anything other than look at the merits of the case and make a decision that it didn't think it could win. If the Union were to take every single discharge grievance to arbitration, it would not be in the interest of the members, because the Union would lose credibility with the employer in terms of trying to settle meritorious grievances. If they insist on taking every case, litigating every case all the way, then there's going to be less ability to settle and the Union could lose credibility with arbitrators. As I mentioned to counsel, it seemed to me that the Union had achieved something for her client in this case, in any of it. Right. I think there are some cases where the state may refuse to give even a clean resignation because they feel it so strongly that the discharge has to remain and the Union cannot even achieve that resolution. So here, that was a resolution that was achieved to be able to not have the discharge on his record. Certainly, that's something that if you can't win the job back, that an employee would normally want to have to be able to go on and look for a different job. And so the Union notified him that it had made the best arguments it could, this was the best it could do, and it didn't see... If the Union pursued the grievance to arbitration and lost, then the discharge would have been on his record. So if the Union made a decision that it couldn't win at arbitration, then it was better for it to achieve this resolution for him, which would allow a resignation, because once you pursue it to arbitration, that possibility would be lost and an adverse arbitrator ruling would leave the discharge and the charges against him in his personnel record. So, you know, Michaels argues that the state retaliated against him and that the Union thought criminal charges should have been brought, but these are all arguments that go to the merits of the grievance and not to any discrimination on the part of the Union. The Union disagreed with Mr. Michaels with respect to the merits of his grievance, but that disagreement is not enough to show that the Union intentionally discriminated against him in any way. So the Board correctly found here that Michaels, in his charge, did not raise dispositive issues of law or fact, warranting the issuance of an unfulfilled labor practice complaint, and correctly dismissed the charge for failure of Mr. Michaels to establish a prima facie case of the breach of the duty of fair representation. It may, therefore, request that the Board order dismissing the charge against the Union be affirmed. Thank you, Counsel. Ms. Bell, any rebuttal there? I just wanted to clear up something, making the best argument I can for my client. And it is true, there is nothing in the record that says the Union was embarrassed by Mr. Michaels' conduct. Okay. With regard to, and I'm just going to stand in my place. Okay. Thank you very much, Counsel. We'll take this matter into advisement, being recessed.